FILED

2010 Dec-10  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **KEVIN A. ROLLE, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **VS.** ) | **CIVIL ACTION NO.:** |
| ) | |
| **JPMORGAN CHASE & CO.; JP** ) | _____ |
| **MORGAN CHASE BANK, N.A.; and** ) | |
| **CHASE HOME FINANCE, L.L.C.;** ) | **JURY DEMANDED** |
| **Fictitious defendants A-F, intending to** ) | |
| **designate those persons, firms,** ) | |
| **corporations or other entities who or** ) | |
| **which are liable for the damages** ) | |
| **incurred by the Plaintiff made the basis** ) | |
| **of this suit; Plaintiff avers that the** ) | |
| **identities of the fictitious party** ) | |
| **defendants are unknown at this time, or,** ) | |
| **if their identities are known, their names** ) | |
| **as proper party defendants are not** ) | |
| **known at this time but will be substituted** ) | |
| **by amendment when the aforesaid** ) | |
| **lacking knowledge is ascertained.** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

## INTRODUCTION

1.    Plaintiff brings this suit against Defendants for their failure to honor agreements with Plaintiff, an individual homeowner, to modify his mortgage to be affordable and sustainable.

2.     Plaintiff has relied on promises and representations of Defendants, all or one or more of the fictitious Defendants A-F, that he would be able to modify his mortgage loan to avoid foreclosure. Plaintiff has invested his limited resources into making modified payments based on the reasonable belief that doing so would result in a permanent modification of his loan. Instead, Plaintiff has endured months of delay, deception and bad faith by all or one or more of the Defendants. As a result, Plaintiff has suffered significant damage to his credit and other serious financial damages.

3.     Plaintiff brings this action against Defendants, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and Chase Home Finance, L.L.C., (collectively "Chase") for compensatory and punitive damages, interest, costs, attorneys' fees and any such other relief as this Court finds equitable and just.

## JURISDICTION

4.     This Court has original jurisdiction over the claims in this action, pursuant to 28 U.S.C. § 1331, in that some of claims arise under the laws of the United States.

5.     This Court has original jurisdiction over the claims in this action, pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendants are citizens and/or entities of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.     The court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the acts or omissions that made the basis of this Complaint occurred in this district and division.

## PARTIES

8.     Plaintiff, Kevin A. Rolle, is an individual, over the age of nineteen (19) years and is a resident of Madison County, Alabama.

9.     Defendant, JPMorgan Chase & Co., is believed to be a New York foreign business corporation and all times pertinent hereto, owned and operated JPMorgan Chase Bank, N.A.

10.    On information and belief, Defendant, JPMorgan Chase Bank, N.A., is a national banking association with its main office being located in the State of New York.

11.    On information and belief, Defendant, Chase Home Finance, L.L.C., is a Delaware limited liability company doing business in the State of Alabama, and is a wholly owned and operated subsidiary of Defendant, JPMorgan Chase Bank, N.A.

12.     The named Defendants herein, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and Chase Home Finance, L.L.C., are hereinafter collectively referred to as "Chase."

13.     Fictitious defendants "A" through "F" are those persons, firms, corporations or other entities whose identities are not known, or, if their identities are known, their names as proper party defendants are not known at this time but will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

## STATEMENT OF GENERAL FACTS

14.     Plaintiff reavers and realleges paragraphs 1 though 13 as if fully stated herein and further avers as follows:

15.     The United State Department of Treasury created the "Home Affordable Modification Program" ("HAMP") pursuant to its authority under the "Troubled Asset Relief Program" ("TARP".)   (*See* Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, § 101, 122 Stat. 3765 (October 3, 2008.)  The purpose of the HAMP program is to stem the foreclosure crisis by providing affordable loan modifications and other alternatives to foreclosure for eligible borrowers.  Under the terms of HAMP, the Treasury Department provides financial incentives for lenders to reduce homeowners' monthly mortgage payments to affordable levels.

16.    The goal of a HAMP mortgage modification is for the homeowner to receive a modification of a first-lien loan such that the monthly mortgage payment is reduced to 31% of homeowners' monthly income for the next five (5) years.  A HAMP modification consists of two (2) stages.  First, a participating loan servicer is required to gather information and, if appropriate, offer the homeowner a "Trial Period Plan."  Second, upon successful completion of the Trial Period Plan, the loan servicer must offer the homeowner a permanent modification.

17.    To participate in HAMP, loan servicers enter into contracts with the Federal National Mortgage Association ("Fannie Mae") in its capacity as an agent of the United States.

18.    Defendant, JPMorgan Chase Bank, N.A., signed a "Servicer Participation Agreement for the Home Affordable Modification Program" (the "HAMP" contract) on or about July 31, 2009 with Fannie Mae (see attached *Exhibit "A".)*  On information and belief, Defendant, Chase Home Finance, L.L.C., also signed a HAMP contract with Fannie Mae on April 13, 2009.

19.    Section 1(A) of the HAMP contract incorporates by reference the "Supplemental Directive" issued by the Treasury, Fannie Mae or Freddie Mac.

20.    Under the HAMP Supplemental Directive issued April 6, 2009, "participating servicers are required to consider <u>all</u> eligible mortgage loans unless prohibited by the rules of the applicable [Pooling and Servicing Agreement] and/or

other investor servicing agreements."  See Supplemental directive 09-01 at page 1 (attached as *Exhibit "B"*) (emphasis on original.)   In addition, if a borrower contacts a participating servicer regarding a HAMP modification, the participating servicer must collect income and hardship information to determine if the borrower is eligible for a HAMP modification. *Id.* at 3-4.

21.    Chase's  obligations  as  a  participant  in  the  HAMP  program  are specified  in  Supplemental  Directive  09-01.    Chase  must  make  a  threshold determination  of  whether  the  borrower  meets  basic  eligibility  criteria  for  the HAMP program.  These criteria include a determination that there was no previous HAMP modification of the mortgage, the borrower is in default or likely to be in default, the borrower lives in the home, the current monthly payments are above 31% of the borrowers gross income and the borrower is experiencing financial hardship. *Id.* at 2-3.

22.    Next, if the borrower meets these basic eligibility criteria, Chase is required to conduct a "waterfall" test.  To do so, Chase applies the modification steps  enumerated  in  Supplemental  Directive  09-01,  in  the  stated  order  of succession, until the borrower's monthly mortgage payment ratio is reduced to 31% of the borrower's monthly income.  The steps include reducing the interest rate and extending the terms of the loan to adjust the borrower's monthly gross household income. *Id.* at 8.

23.   Chase then completes a "net present value" ("NPV") test to see if these modified terms would put the investor in a better financial outcome than if the property proceeded to foreclosure.  If the NPV test yields a "positive" outcome (i.e., the value  of completing a modification exceeds the value of foreclosing on the property), Chase "must offer" the trial modification under HAMP. *Id.* at 4.   If the NPV test yields a "negative" outcome (i.e., the value of completing a modification is less than the value of foreclosing on the property), Chase is required to consider the borrower for other foreclosure prevention measures.

24.   Chase uses a standard form agreement to offer a Trial Period Plan to eligible homeowners.  Borrowers make three (3) payments under a HAMP Trial Period Plan.  The agreement describes the homeowner's duties and obligations under the plan and promises a permanent HAMP modification for homeowners who execute the agreement and fulfill the documentation and payment requirements.

25.   During the Trial Period Plan, Chase verifies the borrowers' income to set the monthly payment amount in the permanent loan modification.  *Id.*

26.   According to Supplemental Directive 09-01, if the borrowers' income is verified and "if the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period as specified in the "Trial Period Plan." *Id.* at 18.

27.     Chase has routinely failed to meet its obligations under the HAMP Supplemental Directives.   Homeowners who request to be evaluated for a modification under HAMP routinely face unexplained delays and go weeks or months with no communication from Chase after providing the requested information.   Homeowners who attempt to contact Chase by telephone face long periods of time on hold and are transferred between representatives until they often give up and terminate the call.   Chase regularly falsely informs borrowers that it did not receive requested information and demands that documents be resent. Chase routinely fails to inform homeowners of the reason(s) for a delay or denial of loan modification by, for example, stating the homeowners' income is too low, but failing to specify what documents that determination is based on.

## STATEMENT OF SPECIFIC FACTS

28.     Plaintiff reavers and realleges paragraphs 1 though 27 as if fully stated herein and further avers as follows:

29.     The Plaintiff, Kevin A. Rolle, owns real property in Orangeburg County, South Carolina.   The property address is 3026 Bragg  Blvd, Orangeburg, South  Carolina, 29117, (hereinafter referred to as "Bragg" property), more specifically described in *Exhibit "C"* attached hereto.

30.     At all times pertinent hereto, the Bragg property was Plaintiff's primary residence.

31.   The mortgage loan on the Bragg property is currently, and at all times pertinent hereto, serviced by the Defendant, Chase.

32.   In and around March, 2009, the Plaintiff became unemployed and contacted Chase regarding options for loan modification. Plaintiff was initially advised by a representative of Chase that he should not pay his mortgage payment for ninety (90) days to be eligible. However, Chase stated that he may be eligible for a federal loan modification program, "Making Home Affordable", serviced by and through Chase. Chase told Plaintiff to pay $2,384.00 and, if he was able to maintain that payment, he would qualify for the modification. Plaintiff made the payments monthly, in a timely fashion, yet never received any statement or document of this agreement from Chase, although Plaintiff requested said documentation on numerous occasions.

33.   In May, 2009, Plaintiff applied for a position at Jarvis Christian College in Hawkins, Texas. Although he made it through the third level of the interview process, ultimately he was not hired. Later, Plaintiff was informed by a trustee board member of Jarvis Christian College that he was not offered the position at Jarvis Christian College due to his negative credit report, which showed he was past due on his mortgage on the Bragg property.

34.    In and around September, 2009, the Plaintiff obtained employment at Alabama A&M University in Madison County, Alabama.  Plaintiff immediately notified Chase of his employment.

35.    Since the Plaintiff had become employed, he was advised that he no longer qualified for the "Making Home Affordable" program.  However, Chase informed the Plaintiff at that time that he would be eligible for the "Home Affordable Modification Program" (hereinafter referred to as "HAMP") also serviced by and through Chase.

36.    The Plaintiff met the criteria for a HAMP modification.  He was had been late in paying his mortgage paying, was experiencing financial hardship, the mortgaged property was his primary residence and he had not received a HAMP modification loan previously.  Therefore, Chase told the Plaintiff to pay $1,879.00 per month for a 3-month trial period and then they (Chase) would send him documents to complete for a permanent modification loan.

37.    The Plaintiff agreed to the terms as stated during the telephone conversation with the representative of Chase and he continued to make timely payments to Chase on the Bragg property mortgage loan.

38.    Plaintiff began contacting Chase about the status of the permanent modification loan documents in January, 2010, yet received no response or answers as to the status.  In and around March 31, 2010, the Plaintiff had still not

received any communication from Chase nor had he received any correspondence, document or statement from Chase evidencing their agreement and/or evidencing his payments.   The Plaintiff contacted Chase again and was informed that the documents had been sent to him but had had mistakenly been mailed to the wrong address.   Plaintiff was told that they would over-night the documents to him at the correct address.   Plaintiff did not receive the documents.

39.   From March 31, 2010, the Plaintiff called Chase every day regarding the status of the modification documents and, every day he spoke with a different representative of Chase and he was continually told something different and provided was conflicting information.   All the while, Plaintiff's credit was deteriorating.

40.   The Plaintiff continued to timely pay the modified mortgage payments of $1,879.00.   The payments were being received and negotiated by Chase. However, Chase never responded to Plaintiff or sent the Plaintiff any statement or document evidencing his payments or his loan modification.

41.   In July, 2010, the Plaintiff employed an attorney, Kimberly C. Brown, to send a formal letter to Chase in an attempt to remedy the matters.   Although Ms. Brown received a response to her correspondence, Ms. Brown's efforts to resolve Plaintiff's issue were also unsuccessful.

42.    On or about August 24, 2010, Plaintiff retained the undersigned to attempt to resolve the issues.  The undersigned immediately notified Chase of said representation and requested documentation of the loan modification.  (See attached *Exhibit "D".*)  Plaintiff's counsel made more than twenty-five (25) telephone calls to Chase and sent numerous facsimiles and letters to Chase requesting the loan modification documents and/or the status of the documents. Neither the Plaintiff nor his counsel received a response.  Plaintiff continued to timely make his monthly payments.

43.    On or about August 30, 2010, Plaintiff's counsel finally did ascertain from a representative of Chase that the $1879.00 modified payments being made by the Plaintiff were not being posted to his account due to that department's not having mailed the modification documents to the Plaintiff.  It was also determined that the last payment that had actually been "posted" to Plaintiff's account was on February 4, 2010.  Chase was holding $7,426.56, from checks that had cleared Plaintiff's bank account.

44.    Every agent, representative, and employee of Chase with whom Plaintiff's counsel spoke simply asserted that some other individual was responsible and that it would take 7-10 business days to process Plaintiff's request. All the while, although Plaintiff continued to make his monthly payments, his

credit continued to deteriorate due to the failure of Chase to post the payments to his account.

45.    Throughout this time, Chase sent to the Plaintiff several "Notices of Intent to Foreclose", also referred to as an "Acceleration Warning."  This contact occurred *after* Chase was notified of the undersigned's representation of the Plaintiff, and *after* numerous conversations Plaintiff's counsel had with various agents, representatives and employees of Chase.  (See letters from Chase to Plaintiff dated March 13, 2010, September 3, 2010 and September 13, 2010, attached and collectively marked as *Exhibit "E"*.)  The statements in the letters were false.  The Plaintiff had made his monthly payments and otherwise had done everything he had been told he was required to do to obtain a loan modification through Chase.

46.    Also on September 13, 2010, Chase sent a letter to Plaintiff notifying him the servicing of his loan was being transferred, or sold, from Chase to IBM Lender Business Process Services.  However, on September 24, 2010, Chase issued another letter to the Plaintiff stating the loan was not being sold or transferred. (See letters attached hereto and collectively marked as *Exhibit "F"*.)

47.    Further, Plaintiff sent a "Cease and Desist Communications" letter to Chase on September 22, 2010; however, Defendant, Chase, its agents, employees, officers and/or representatives, continued to attempt contact with Plaintiff

personally by correspondence through the U.S. Mail and they continue to telephone him daily, harassing him about his account. The Cease and Desist letter was resent to the Defendant on September 28 and October 20, 2010. (See letters and facsimiles dated September 22, 28 and October 20, 2010, attached hereto and collectively marked as *Exhibit "G"*.)

48.    Finally, on September 25, 2010, the Plaintiff's loan modification documents were received by Plaintiff's counsel, yet the letter accompanying the documents was dated the original date they were sent to the wrong address, March 29, 2010.   Nevertheless, in an effort to finally complete the process,  Plaintiff signed the documents and they were returned to Chase.   Although the loan modification was ultimately finalized, Chase continues to report that the Plaintiff is past due.  Plaintiff's credit rating and his credit worthiness have been ruined.

49.    Since August 24, 2010, the date Plaintiff's counsel first notified Chase of her representation of the Plaintiff, Plaintiff's counsel, and office personnel, have called Chase every day requesting information about Plaintiff's modification documents and either left messages or they were transferred, repeatedly, from a manager, to a supervisor, to another supervisor, to underwriting, to a "fulfillment center", to customer service, to the loss and mitigation department, to the processing center, to the loss prevention distribution center and eventually, and finally, to the legal department.

50.    Although the Plaintiff made his modified mortgage loan payments and had complied with all other aspects of HAMP, Chase reported Plaintiff's account as delinquent or past due, damaging his credit rating and credit worthiness and as well as repeatedly threatened Plaintiff with foreclosure.

51.    As a proximate consequence of Chase's acts, omissions, failures, misrepresentations and misconduct, Plaintiff has suffered the following damages:

(a)    Loss of employment income in the amount of $250,000.00 (Two Hundred Fifty Thousand and No/100 Dollars) due to Plaintiff not being hired for the position at Jarvis Christian College due to his poor credit rating;

(b)    Damage to his credit rating and credit worthiness due to Chase wrongfully reporting delinquent and/or past due debt to national credit reporting agencies;

(c)    Significant increase in tax liability due to interest on mortgage being suspended;

(d)    Emotional distress, mental anguish, inconvenience, embarrassment; and

(e)    Attorney's fees and costs incurred by Plaintiff in attempting to resolve the issues made the basis of this suit.

## COUNT I
## <u>BREACH OF CONTRACT</u>

52.     Plaintiff reavers and realleges paragraphs 1 though 51 as if fully stated herein and further avers as follows:

53.     Defendant Chase entered into a contractual relationship with the Plaintiff through its offer of HAMP Trial Period Plans.

54.     Plaintiff accepted the Defendant's offer by making the requested mortgage payments.

55.     The Defendant breached its contract with the Plaintiff by failing to provide him with permanent loan modification documents

56.     The acts and omissions made by the Defendant, and all or one or more of fictitious defendants A-F previously described, in connection with the administration and management of Plaintiff's mortgage loan constitutes a breach of mortgage and note.

57.     As a proximate result of the Defendants' breach, the Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and

severally, for compensatory and punitive damages, plus interest, attorney's fees and costs of this action.

## COUNT II
## BREACH OF FIDUCIARY DUTY

58.     Plaintiff reavers and realleges paragraphs 1 though 57 as if fully stated herein and further avers as follows:

59.     Defendant Chase, and all or one or more of fictitious defendants A-F previously described, at all times relevant hereto, owed to the Plaintiff an implied fiduciary duty of fairness and good faith as to all aspects of the mortgage modification agreement, including the management of his payments and the exercise of any power of sale clause contained in the mortgage.

60.     The acts and omissions made by the Defendant in connection with management of the Plaintiff's mortgage constitute a breach of the duty owed by Defendant.  Those acts and omissions include, but are not limited to, the following:

(a)     failure to comply with its own written agreements and statements to the Plaintiff;

(b)     the continued treatment of Plaintiff as if he had defaulted on his mortgage loan, when in fact he had not;

(c)     sending Plaintiff notices of intent to foreclosure when there was no delinquency or default; and

(d)    failure to communicate to Plaintiff concerning the status of the loan modification documents.

61.    As a proximate result of the Defendants' breach, the Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages plus interest, attorney's fees and costs of this action.

## COUNT III
## NEGLIGENCE

62.    Plaintiff reavers and realleges paragraphs 1 though 61 as if fully stated herein and further avers as follows:

63.    The acts and omissions made by the Defendants, and all or one or more of fictitious defendants A-F previously described, in connection with management of the Plaintiff's mortgage constitutes negligence.  Those acts and omissions include, but are not limited to, the following:

(a)    failure to comply with its own written agreements and statements to the Plaintiff;

(b)     the continued treatment of Plaintiff as if he had defaulted on his mortgage loan, when in fact he had not;

(c)     sending Plaintiff notices of intent to foreclosure when there was no delinquency or default; and

(d)     failure to communicate to Plaintiff concerning the status of the loan modification documents.

64.    Defendants knew, or should have known, that Plaintiff would rely upon Defendants to protect his interests in securing a loan modification and protecting his loan account.

65.    Defendants negligently represented to the Plaintiff that he would not be considered for a loan modification unless he missed mortgage payments and became delinquent.

66.    Defendants negligently represented to the Plaintiff that if he made the payments under the Trial Plan Agreement he would receive a permanent loan modification.

67.    As a proximate result of the Defendants' negligence, the Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, , Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages plus interest, attorney's fees and costs of this action.

## COUNT IV
## WANTONNESS

68.    Plaintiff reavers and realleges paragraphs 1 though 67 as if fully stated herein and further avers as follows:

69.    Defendants' knew or should have known that Plaintiff would rely upon Defendants to protect his interests in securing a loan modification and protecting his loan account.

70.    The acts and omissions made by the Defendant, and all or one or more of fictitious defendants A-F previously described, in connection with management of the Plaintiff's mortgage constitutes wantonness.   Those acts and omissions include, but are not limited to, the following:

(a)    failure to comply with its own written agreements and statements to the Plaintiff;

(b)    continued treatment of Plaintiff as if he had defaulted on his mortgage loan, when in fact he had not; and

(c)    sending Plaintiff notices of foreclosure warning when there was no delinquency or default; and

(d)    failure to communicate to Plaintiff concerning the status of the loan modification documents.

71.    As a proximate result of the Defendants' wantonness, the Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages plus interest, attorney's fees and costs of this action.

## COUNT V
## FRAUD

72.    Plaintiff reavers and realleges paragraphs 1 though 71 as if fully stated herein and further avers as follows:

73.    Defendant, Chase, and/or its employees, agents and representatives, and all or one or more of fictitious defendants A-F previously described, misrepresented to the Plaintiff that (a) Plaintiff could be considered for a loan modification even if he were current on his mortgage payment; (b) that his loan

modification had been accepted and approved; and (c) that he would be receiving the permanent loan modification paperwork in the mail from Chase. Defendants' representations were material, intentional or reckless.

74.   Plaintiff has attempted to refinance his loan, however was not approved due to the false reporting on Plaintiff's credit report leaving Chase his only option. Plaintiff relied on the foregoing representations of Defendants and/or its employees, agents, officers and representatives, to his detriment.

75.   As a proximate result of the Defendants' misrepresentations, the Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages plus interest, attorney's fees and costs of this action.

## COUNT VI
## OUTRAGE

76.   Plaintiff reavers and realleges paragraphs 1 though 75 as if fully stated herein and further avers as follows:

77.    Defendant, Chase, and all or one or more of the fictitious defendants A-F, repeatedly and systemically collected payments on the mortgage loan account and continued to report to the national credit agencies that Plaintiff was in default and/or past due and eventually threatening foreclosure on the Plaintiff's property. Chase has undertaken to disparage Plaintiff through false reporting.  Such conduct is harassing, malicious, extreme, and cruel.

78.    As a proximate result of Defendant's malicious conduct and acts, Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendant, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages, together with interest, attorney's fees and costs of this action.

## COUNT VII
## DEFAMATION

79.    Plaintiff reavers and realleges paragraphs 1 though 78 as if fully stated herein and further avers as follows:

80.    Defendant Chase, and all or one or more of the fictitious defendants A-F, has reported false credit information to others, knowing that the information was false.

81.    As a proximate result of Defendant's conduct, acts and omissions, Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendants, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages, together with interest, attorney's fees and costs of this action.

## COUNT VIII
## NEGLIGENT, RECKLESS, WANTON AND/OR WILFULL TRAINING AND SUPERVISION

82.    Plaintiff reavers and realleges paragraphs 1 though 81 as if fully stated herein and further avers as follows:

83.    Defendant, Chase, knew or should have known the conduct of its employees, agents and/or officers, as set forth herein, was and/or would be directed and visited upon the Plaintiff.

84.    Defendant knew or should have known that said conduct was improper.

85.   Defendant, Chase, and all or one or more of the fictitious defendants A-F, negligently, recklessly, wantonly, and/or willfully failed to train and/or supervise its employees, officers, agents in order to prevent improper conduct.

86.   Defendant, Chase, and all or one or more of the fictitious defendants A-F, negligently, recklessly, wantonly and/or willfully failed to train and/or supervise or otherwise govern its employees concerning the handling of escrow accounts, investigations and/or disputes regarding escrow accounts, billing, collections and/or application of payments.

87.   As a proximately result of the Defendants' negligent, reckless, wanton and/or willful training and supervision of its employees, officers and/or agents, Defendant has caused the Plaintiff to suffer economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendant, and all or one or more of fictitious defendants A-F previously described, separately and severally, for compensatory and punitive damages, together with interest, attorney's fees and costs of this action.

## COUNT IX
## VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2a

88.   Plaintiff reavers and realleges paragraphs 1 though 87 as if fully stated herein and further avers as follows:

89.   Defendant, Chase, is a "person" which provides information concerning Plaintiff's "credit report", and Plaintiff, Kevin Rolle, is a "consumer" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2a.

90.   Chase knowingly violated 15 U.S.C. § 1681s-2(b) by willfully, knowingly and deliberately furnishing false credit information concerning Plaintiff to credit reporting agencies, by reporting the account as unpaid and owed, and past due, when it was not.

91.   As a proximate result of Defendant's conduct, acts and omissions, Plaintiff has suffered economic damages, loss of income and earning capacity, damage to his credit rating, loss of credit worthiness, damage to his reputation, mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendant, and all or one or more of fictitious defendants A-F previously described, for compensatory and punitive damages, together with interest, attorney's fees and costs of this action.

## COUNT X
## VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1692c(c)

92.    Plaintiff reavers and realleges paragraphs 1 though 91 as if fully stated herein and further avers as follows:

93.    Defendant, Chase, its agents, employees, officers and/or representatives, knowingly violated 15 U.S.C. § 1692c(c) by continually contacting the Plaintiff by written correspondence and by daily harassing telephone calls to the Plaintiff, although the Plaintiff sent Chase a "Cease and Desist Communications letter."

94.    As a proximate result of Defendant's conduct and acts, Plaintiff has suffered mental anguish, stress and frustration.

WHEREFORE, Plaintiff demands judgment against Defendant, and all or one or more of fictitious defendants A-F previously described, for compensatory and punitive damages, together with interest, attorney's fees and costs of this action.


<u>**s/ Annary A. Cheatham**</u>
Annary A. Cheatham
Bar No.: ASB-9614-A62C
Attorney for Plaintiff

**CHEATHAM & ASSOCIATES, PLLC**
509 Madison Street
Huntsville, Alabama 35801
(256) 851-1433
(256) 851-1432 Fax
cheathamgroup@cheathamgroup.com

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THIS CAUSE.

_s/s Annary A. Cheatham_

SERVE DEFENDANTS BY CERTIFIED MAIL TO:

Defendants' Addresses:

JPMorgan Chase & Co.
c/o CT Corporation System
111 Eighth Avenue
13th Floor
New York, NY  10017

JPMorgan Chase Bank, N.A.
c/o CT Corporation System
111 Eighth Avenue
13th Floor
New York, NY  10017

Chase Home Finance, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801